# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN GOODRICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-15-272-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant John Goodrich, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born March 28, 1962, and was fifty-three years old at the time of the administrative hearing (Tr. 28). He has completed ninth grade and earned a GED, and has worked as a sales manager and finance director (Tr. 23, 199). The claimant alleges that he has been unable to work since May 29, 2013, due to post-traumatic stress disorder, irritable bowel syndrome with hiatal hernia, right carpal tunnel syndrome, cervical spine strain, bilateral pes planus, and scars as a residual of his carpal tunnel surgeries (Tr. 198).

## Procedural History

On July 7, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 24, 2015 (Tr. 12-24). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c), *i.e.*, he could lift/carry fifty pounds occasionally and twenty-five pounds frequently, and sit/stand/walk six hours in an eight-hour workday, but

with the additional limitations of avoiding working above the shoulder level with no constant (no more than frequent) use of the hands for such repetitive tasks as keyboarding. Additionally, the ALJ limited the claimant to simple, repetitive tasks with the ability to relate to supervisors and co-workers only superficially, and that he cannot work with the public (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work the claimant could perform, *e. g.*, warehouse worker and kitchen helper (Tr. 23-24).

## Review

The claimant argues that the ALJ erred by: (i) failing to properly assess the claimant's RFC particularly as it related to his mental impairments, (ii) improperly assessing his credibility, and (iii) failing to properly consider the significance of his VA disability rating. The undersigned Magistrate Judge agrees with the claimant's first and third contentions, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of mild bilateral shoulder tendinitis status post surgery on the left shoulder, mild degenerative disc disease of the cervical spine, status post bilateral carpal tunnel syndrome, depression, and anxiety, as well as the nonsevere impairments of hypertension, irritable bowel syndrome (IBS), hypothyroidism, and status post sinus surgery (Tr. 14). The relevant medical evidence reveals that the claimant received most of his treatment through Department of Veterans Affairs (VA) facilities, but was also treated at Applegate Medical Clinic. With regard to his treatment at the VA, the claimant previously held a VA disability rating that included a 50% disability rating due to PTSD (Tr. 146). On May 30, 2014, the VA

reviewed the claimant's new claimant for benefits and determined that his PTSD with secondary major depression had worsened, and that he was considered 100% disabled as to his PTSD effective August 2, 2013 (up from 90% disabled effective May 29, 2013) (Tr. 146, 148). Additionally, the claimant was notified that his other service-connected condition ratings had not changed and remained as follows: 30% irritable bowel syndrome with hiatal hernia, 20% left carpal tunnel syndrome status post release, 30% right carpal tunnel syndrome status post release, 10% cervical spine strain (claimed as commission of the neck with pain and previously denied as degenerative joint disease, cervical spine, without neurological compromise), 10% bilateral pes planus, and 0% scars as residuals of carpal tunnel surgeries (Tr. 146). The "Reasons for Decision" portion of this notification to the claimant stated that he was assigned a 100% evaluation for PTSD based on these factors: intermittent inability to perform activities of daily living; total occupational and social impairment; intermittent inability to perform maintenance of minimal personal hygiene; difficulty in adapting to work; near-continuous panic affecting the ability to function independently, appropriately, and effectively; difficulty in adapting to stressful circumstances; suicidal ideation; near-continuous depression affecting the ability to function independently, appropriately, and effectively; difficulty in adapting to a work-like setting; disturbances of motivation and mood; flattened affect; difficulty in establishing and maintaining effective work and social relationships; impairment of short- and long-term memory; forgetting to complete tasks; impaired judgment; retention of only highly learned material; forgetting directions; forgetting recent events; forgetting names; depressed mood; mild memory loss; chronic sleep impairment; and anxiety

(Tr. 153). The VA made a further finding that the claimant became unable to secure or follow a substantially gainful occupation effective May 29, 2013 (Tr. 153).

In his written opinion at step two, the ALJ made no mention of the claimant's PTSD whatsoever, but made a number of other findings related to severe and nonsevere impairments, including anxiety and depression. At step three, the ALJ in conducting the requisite listing analysis related to mental impairments noted the claimant's diagnosis of PTSD, but stated that the medical evidence showed "only limited outpatient services including individual counseling and psychiatric consultation, and found that the claimant's VA disability rating "appears exaggerated" (Tr. 15). At step four, the ALJ summarized the claimant's hearing testimony, found he was not credible, and also found his wife's Third Party Function Report not credible (Tr. 18). He then proceeded to summarize much of the medical evidence in the record. He painstakingly noted the numerous places in the record where the claimant was given a diagnosis of PTSD, then stated that despite this "reported symptoms/diagnosis," the claimant had frequently travelled between Oklahoma and Oregon, remarried, refused to participate in cognitive behavioral therapy and medication, and reported doing okay (Tr. 21). He then assigned little weight to the VA's disability rating, because the VA process is fundamentally different from the Social Security Administration's, the VA does not make a "function-by-function assessment of an individual's capabilities," and is of little probative value (Tr. 21-22). Continuing, the ALJ found that the claimant's treatment records did not support his reports of increasing symptoms, complaints often concerned marital conflict, and "[m]ost telling, the claimant declined CBT therapy or psychotropic medication,"

asserting without a supporting medical opinion that "it is reasonable to assume that he would exhaust every means possible to obtain relief" (Tr. 22).

The ALJ's treatment of the evidence in the record and the claimant's disability rating were deficient. First, the ALJ erred in completely omitting from consideration at steps two and three the claimant's repeated diagnosis of PTSD, opting instead to find a diagnosis of depression and anxiety (which predated his alleged onset date and was eventually diagnosed as PTSD). "At step two, a claimant bears the burden of making a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities. This is a de minimis showing. Here, as in *Grogan*, the ALJ's failure to discuss the significance of the VA's disability evaluation in concluding that [claimant] had not met the 'de minimus' required showing of a severe impairment at step two was reversible error." *Kanelakos v. Astrue*, 249 Fed. Appx. 6, *8 (10th Cir. 2007) (where ALJ found severe physical impairments but no severe mental impairments), *quoting Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) *and Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). Even if this error is not in itself cause for reversal, the claimant's PTSD nevertheless must be considered throughout the sequential evaluation as a nonsevere impairment, and an ALJ *is still required* to consider the effects of each of the impairments and account for them in formulating the claimant's RFC at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this

does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Additionally, the ALJ further failed to properly assess the combined effect of *all* the claimant's impairments – both severe and nonsevere – in assessing his RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

The ALJ further erred at step four not just with regard to his mental impairment of PTSD but also with regard to his 100% service-connected disability rating. In fact, the ALJ claimed there were no "function-by-function assessments" regarding the claimant's mental impairment, ignoring both the twenty-three reasons the claimant's PTSD diagnosis was based on, including "intermittent inability to perform activities of daily living," "difficulty in adapting to work," "difficulty in adapting to stressful circumstances," and "suicidal ideation," *as well as* his own authority to order any

necessary consultative examinations (Tr. 153). To be sure, the ALJ was not required to give controlling weight to the disability ratings by the VA, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), but he *was* required to determine the proper weight to give such findings by applying the factors in 20 C.F.R. §§ 404.1527, 416.927. Here, the ALJ failed to perform this analysis. *See Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993) ("'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'"), *quoting Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Grogan v. Barnhart*, 399 F.3d 1257, 1262-1263 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480.

Additionally, the ALJ took on the role of physician when he made a finding without medical support that the claimant would have "exhausted every means possible to obtain relief" if his impairment were as severe as alleged (Tr. 22). This is not based on medical evidence, and indicates a complete lack of understanding of the effects of mental impairments in general. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) ("The ALJ may not substitute his own opinion for that of claimant's doctor."), *citing Sisco v. United*

*States Department of Health & Human Services*, 10 F.3d 739, 743 (10th Cir. 1993) *and Kemp v. Bowen*, 816 F. 2d 1469, 1475 (10th Cir. 1987).

The ALJ's assigned RFC included a limitation to simple and repetitive tasks which is presumably his attempt at a psychologically-based limitation, but here the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for *this* claimant's severe mental impairment. *See, e. g.*, *Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work."). The undersigned Magistrate Judge acknowledges that the record in this case is sparse with regard to functional examining evaluations of the claimant's mental impairments, as well as the ALJ's broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Nevertheless, the undersigned Magistrate Judge encourages the ALJ to consider recontacting the claimant's treating physicians at the VA, requesting further medical records, and/or ordering a consultative examination to properly account for the

claimant's mental impairment.  *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").  A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record, but an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record, and the undersigned Magistrate Judge leaves that to the ALJ on remand.  *See Hawkins*, 113 F.3d at 11666, 1168.  The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record and completely failed to acknowledge one of the claimant's impairments that has been found by a different agency to be 100% disabling.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**